George Torgun (Bar No. 222085)
Sejal Choksi-Chugh (Bar No. 222093)
Andrea Kopecky (Bar No. 276366)
SAN FRANCISCO BAYKEEPER
785 Market Street, Suite 850
San Francisco, California 94103
Telephone: (415) 856-0444
Facsimile: (415) 856-0443
Email: george@baykeeper.org
Email: sejal@baykeeper.org
Email: andrea@baykeeper.org

Attorneys for Plaintiff
SAN FRANCISCO BAYKEEPER

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | | |
|---|---|---|
| SAN FRANCISCO BAYKEEPER, | ) | No. C 13-05153 KAW |
| | ) | |
| Plaintiff, | ) | **[PROPOSED]** ORDER OF ENTRY OF |
| v. | ) | SETTLEMENT AGREEMENT, AND |
| | ) | DISMISSAL |
| | ) | |
| OLDCASTLE PRECAST, INC., | ) | Honorable Kandis A. Westmore |
| | ) | |
| Defendant. | ) | |
| | ) | |

Proposed Order Entering Settlement
Agreement and Dismissal

Civ No. 13-05153 KAW

**[PROPOSED] ORDER OF ENTRY OF SETTLEMENT AGREEMENT, AND DISMISSAL**

WHEREAS, the Parties in the above captioned action have reached a settlement whose specific terms are set forth in the [Proposed] Settlement Agreement, attached hereto as Exhibit A.

WHEREAS, as required by federal law, a copy of the [Proposed] Settlement Agreement was mailed on April 9, 2014, to the U.S. Department of Justice ("DOJ") and to the U.S. Environmental Protection Agency for a mandatory 45-day review period under Section 135.5 of Title 40 of the Code of Federal Regulations. The 45-day review period commenced on April 16, 2014, and terminated on June 2, 2014.

WHEREAS, DOJ approved the [Proposed] Settlement Agreement and submitted its approval letter to the Court on June 2, 2014. *See* Exhibit B.

IT IS HEREBY ORDERED that the [Proposed] Settlement Agreement is fully incorporated herein by reference, and is entered as an Order of the Court.

IT IS FURTHER ORDERED that the Court shall retain jurisdiction over Case No. CV-13-05153-KAW for the sole purpose of enforcing compliance by the Plaintiff and Defendant with the terms of the [Proposed] Settlement Agreement.

IT IS FURTHER ORDERED that the above captioned action against Defendant is dismissed with prejudice.

IT IS SO ORDERED.


Date: ___6/10/14_____                    NORTHERN DISTRICT OF CALIFORNIA


_Kandis Westmore_____
Honorable Kandis A. Westmore
United States Magistrate Judge
United States District Court
Northern District of California

---

~~Proposed~~ Order Entering Settlement
Agreement and Dismissal

Civ No. 13-05153 KAW

# EXHIBIT A

## SETTLEMENT AGREEMENT

WHEREAS, San Francisco Baykeeper, Inc. ("Baykeeper") is a non-profit public benefit corporation dedicated to the preservation, protection, and defense of the environment, wildlife, and natural resources of the San Francisco Bay and other area waters;

WHEREAS, Oldcastle Precast, Inc. ("Oldcastle") operates a precast concrete manufacturing facility located at 3786 Valley Avenue in Pleasanton, California (the "Facility");

WHEREAS, Baykeeper and Oldcastle are collectively referred to herein as the "Parties";

WHEREAS, stormwater discharges associated with industrial activity at the Facility are regulated pursuant to the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board], Water Quality Order No. 92-12-DWQ (as amended by Water Quality Order 97-03-DWQ), and any future iterations of this permit, which are issued pursuant to Section 402 of the Federal Water Pollution Control Act, 33 U.S.C. § 1342 (hereinafter "Industrial Stormwater Permit"). These industrial activities include, *inter alia*, the manufacturing and processing of precast concrete, the transportation of materials on and off site, storage of precast concrete, truck and equipment operation, and other industrial activities related to the operation of a precast concrete manufacturing facility;

WHEREAS, the Industrial Stormwater Permit includes the following requirements for all permittees, including Oldcastle: 1) develop and implement a stormwater pollution prevention plan ("SWPPP"), 2) control pollutant discharges using best available technology economically achievable ("BAT") and best conventional pollutant control technology ("BCT") to prevent or reduce pollutants, 3) implement BAT and BCT through the development and application of Best Management Practices ("BMPs"), which must be included and updated in the SWPPP, and, 4)

1

when necessary, implement additional BMPs to prevent or reduce any pollutants that are causing or contributing to any exceedance of water quality standards;

WHEREAS, via letter dated August 20, 2013, Baykeeper served Oldcastle, the Administrator of the United States Environmental Protection Agency ("EPA"), the Regional Administrator of EPA Region IX, the Executive Director of the State Water Resources Control Board ("State Board"), the Executive Officer of the Regional Board, and the U.S. Attorney General with a notice of intent to file suit ("60-Day Notice") under Sections 505(a)(1) and (f) of the Federal Water Pollution Control Act ("Clean Water Act" or "the Act"), 33 U.S.C. § 1365(b)(1)(A), alleging violations of the Act and the Industrial Stormwater Permit at the Facility;

WHEREAS, Baykeeper initiated a lawsuit against Oldcastle in the United States District Court, Northern District of California, Case No. C 13-05153 KAW ("Complaint");

WHEREAS, Oldcastle denies all allegations set forth in the 60-Day Notice and the Complaint and contends that the Complaint should be dismissed; and

WHEREAS, the Parties believe it is in their mutual interest and choose to resolve in full Baykeeper's allegations in the 60-Day Notice and Complaint through settlement and avoid the cost and uncertainties of further litigation;

NOW THEREFORE IT IS HEREBY AGREED BETWEEN THE SETTLING PARTIES, AND ORDERED BY THE COURT, AS FOLLOWS:

## I.      COMMITMENTS OF OLDCASTLE

1.      In order to further reduce or further prevent pollutants associated with industrial activity from discharging via stormwater to the waters of the United States, Oldcastle shall implement appropriate structural and non-structural Best Management Practices ("BMPs"), as required by the Industrial Stormwater Permit, as described more fully below.

2.    **Site Map**:  Within thirty (30) days of the Effective Date, Oldcastle shall update the Site Map included in the Facility SWPPP.  The Site Map shall clearly denote the topography and the direction of stormwater flow for each distinct area of the Facility.  The Site Map shall also identify property boundaries, known or suspected drop inlets, ground type (pervious or impervious), berms and the materials they are composed of, any permanent structures and features, discharge points, and all other physical structures or items relevant under the Industrial Stormwater Permit and in this Settlement Agreement.

3.    **Designation and Protocol for All Sampling Locations**:  Within thirty (30) days of the Effective Date, Oldcastle shall update the Facility SWPPP to fully describe any modifications to the discharge or sampling locations, as shown on the Site Map and described in the SWPPP ("Designated Discharge Point").  While the Settlement Agreement is in effect, if Oldcastle makes any material changes to the Designated Discharge Points at the Facility, Oldcastle shall update the SWPPP within thirty (30) days and submit the revised SWPPP to Baykeeper, consistent with the requirements of Paragraph 14, below.

4.    **Best Management Practices**:  Oldcastle shall develop and implement BMPs necessary to, at a minimum, comply with Effluent Limitation B(3) and Receiving Water Limitation C(2) of the Industrial Stormwater Permit, including the BMPs set forth in paragraphs 5 through 11 of this Settlement Agreement.

5.    **Storm Drain Inlet/Catch Basin Best Management Practices**:

a.    Storm Drain Inlet/Designated Discharge Point Inspections:  Between September 1 and October 1 of each year, Oldcastle shall inspect any storm drain inlets, catch basins, Designated Discharge Points, filtration/treatment devices, trench drains, and other BMPs in place at the Facility.  Oldcastle shall promptly clean, as

3

needed, each drain inlet, catch basin, Designated Discharge Point, filtration/treatment device, trench drain, and other BMPs in order to remove any accumulated dust, sediment, solids, or debris.

b.      Storm Drain Inlet/Designated Discharge Point Maintenance and Cleaning: Weekly during the Wet Season (*i.e.*, from October 1 to May 30 of each year that this Settlement Agreement is in effect) ("Wet Season"), Oldcastle shall inspect all storm drain inlets, catch basins, Designated Discharge Points, filtration/treatment devices, and other BMPs in place at the Facility to ensure that they are not in a condition that would materially impair their efficacy and shall clean out accessible deposited sediment or debris if needed.  Oldcastle shall properly dispose of any dust, sediment, debris, or other removed pollutants.

c.      Log of Storm Drain Inlet/Designated Discharge Point Inspections, Maintenance and Cleaning:  Oldcastle shall prepare and maintain a log of the Storm Drain Inlet/Designated Discharge Point Inspections, Maintenance and Cleaning described herein ("Maintenance Log").  The Maintenance Log shall indicate the staff who completed the maintenance/cleaning activity and when it was completed.  The Log shall be made available for inspection by Baykeeper at any site inspection or otherwise within five (5) business days of any advance request by Baykeeper.

6.      **Abandoned or Inutile Equipment Storage and Removal**:  Within thirty (30) days of the Effective Date and bi-annually, at a minimum, thereafter, Oldcastle shall identify abandoned or broken equipment or materials no longer considered for future use that have the potential to serve as a source of pollutants and either store it under cover or remove it from the Facility.

4

7.      **Vehicle and Equipment Management**:  Beginning on the Effective Date, Oldcastle shall continue to implement BMPs to reduce or minimize pollutant release from equipment such as forklifts, hydraulic lifts, trucks, and other heavy equipment that are parked or stored in areas of the Facility from which stormwater discharges.  Such BMPs shall include placing drip pans under equipment stored or parked continuously for a week or longer, weekly inspections for evidence of leaks from such equipment, and prompt (as soon as reasonably possible and in no case later than in advance of forecasted rainfall events) clean up of spills, drips, or leaks from such equipment.  Any spilled substances and absorbent materials used in cleaning up spills shall be disposed of in accordance with all local, state, and federal laws and regulations.

8.      **Vehicle and Equipment Maintenance**:  Beginning on the Effective Date, Oldcastle shall not conduct vehicle or movable equipment maintenance or repair at the Facility in outdoor, uncovered areas from which stormwater discharges during rainfall events, without the use of drip pans or other protective measures to prevent potential pollutant release from contaminating the outdoor area under and around the equipment.  Oldcastle shall inspect the area where the maintenance or repair occurred and clean up waste products, including pollutant-containing fluids deposited or spilled on the ground as a result of the maintenance or repair.

9.      **Filtration:**  Oldcastle agrees to install the following filtration measures for stormwater controls and to maintain such controls in good working order during the Wet Season:

a.      Before the start of the 2014-2015 Wet Season, Oldcastle shall install a modular treatment system based on a flow rate of 10 cfs.  The outlet chamber vault as well as two settling vaults, capable of containing bio retention or sand filter material shall

5

be installed parallel to the existing trench and outfall.  During the Wet Season, Oldcastle will maintain the system in proper condition.

  b.  Should these vaults, alone, fail to keep pollutants at or below the levels at Exhibit 1, Oldcastle shall insert bio retention or sand filter material within 30 days of receipt of laboratory analyses showing an exceedance.

  c.  In the event the bio retention or sand filter material does not correct any exceedances of TSS or iron, Oldcastle shall, in discussion with Baykeeper, insert filter media or alternative bio retention/filter material intended to address the contaminant(s) of concern.  Any filter media agreed upon would be installed in one or more of the then existing chambers.  This alternative material or media shall be implemented within 30 days of agreement on such control, lead times allowing.

  d.  Should the control measures in this paragraph 9 still not succeed in meeting the target levels in Exhibit 1, Oldcastle shall install additional vaults along the existing trench area.  The measures contemplated by paragraph 9 are shown in their entirety in Exhibit 2.

10.  **Trench:**  The modular treatment system shall be installed parallel to the existing stormwater trench.

11.  **Dust suppression:** Oldcastle will apply Jet Dry or other dust suppression chemical when on-site equipment traffic causes noticeable dusting.  During such times, dust suppression shall be applied each day of normal operations.  Chemical usage may be changed, reduced or discontinued and replaced with water in the event such chemicals are believed to be contributing to or causing stormwater pollutant levels.

6

12.     **Training**:  Beginning on the Effective Date, and annually thereafter, and within thirty (30) days of the starting date for new employees, Oldcastle shall conduct training for all appropriate employees to explain the requirements of the Facility's SWPPP to the extent applicable to such employee.  Training shall focus on 1) the employee's role in implementing various stormwater control measures including, for example, implementation of BMPs, sweeping, vehicle maintenance, or facility inspections, and 2) strategies for reducing the release of pollutants that could reach stormwater during rain events.  Training shall be conducted bilingually (*i.e.,* Spanish/English or other pertinent language) to the extent that such employee is not reasonably able to comprehend training in English.  If and when appropriate, Oldcastle shall integrate any new training requirements resulting from this Settlement Agreement into the Facility SWPPP.  Oldcastle shall also update the SWPPP, if and when appropriate, to identify the positions responsible for carrying out stormwater management, monitoring, sampling, and SWPPP implementation.

13.     **Maintenance of BMP Structural Controls**:  Beginning on the Effective Date, Oldcastle shall maintain the structural BMPs at the Facility in good operating condition and shall promptly repair any damaged or degraded structural BMPs.

14.     **Amendment of SWPPP**:  Within thirty (30) days of completion of the BMPs in paragraph 9.a, Oldcastle shall amend the Facility SWPPP to incorporate the requirements and BMPs set forth in Paragraphs 5 through 12 of this Settlement Agreement and thereafter submit the updated SWPPP to Baykeeper within fifteen (15) business days.  Baykeeper shall have thirty (30) days from receipt of the amended SWPPP to propose any changes to the SWPPP consistent with this agreement.  Within thirty (30) days of notification by Baykeeper of any proposed changes to the SWPPP, Oldcastle shall make all of Baykeeper's reasonable changes to the

7

amended SWPPP unless Oldcastle timely invokes Dispute Resolution.  Compliance with the

SWPPP, as amended in accordance with this paragraph provision, shall at all times be a

requirement of this Settlement Agreement.

## II.     SAMPLING, MONITORING, INSPECTION & REPORTING

15.     **Sampling Program - Stormwater**:  Beginning with the 2014-2015 Wet Season,

subject to the limitations set forth below, Oldcastle shall collect and analyze stormwater samples

from all of its Designated Discharge Points at the Facility according to the following sampling

schedule:

      a.     During each Wet Season starting with the 2014-2015 Wet Season,

Oldcastle shall collect and analyze samples from Designated Discharge Points during

the first four (4) storm events of the Wet Season, as qualified in the Industrial

Stormwater Permit, except that for purposes of this Agreement Oldcastle can collect

discharges after the first hour of discharge and samples can be collected during any

storm event that is preceded by a 24-hour dry period.  If Oldcastle is unable to take a

sample from any of the Designated Discharge Points during any of the first four storm

events of the Wet Season which occur during scheduled operating hours, Oldcastle

shall continue to sample from any subsequent storm events until four samples have

been collected from each Designated Discharge Point in that Wet Season.  In the

event that Oldcastle is unable to collect four samples from each Designated Discharge

Point in a Wet Season, Oldcastle shall explain in writing why it was unable to collect

the required sample(s).  If three (3) consecutive samples from a Designated Discharge

Point have constituent concentrations below the Target levels set forth in Exhibit 1

8

for all parameters, Oldcastle need not conduct additional sampling in that Wet Season

from that Designated Discharge Point.

      b.      Should industrial processes materially change at the Facility, Oldcastle

shall conduct sampling for any additional toxic priority pollutants listed in 40 C.F.R.

§ 131.38 likely to be present in the Facility's stormwater discharges in significant

quantities as a result of the changed industrial processes.

      c.      Where Oldcastle discharges stormwater into a storm drain inlet, catch

basin, or filtration device, Oldcastle should endeavor to collect a sample below any

insert or treatment device.

16.    **Certified Lab**:  Except for pH samples which will be measured with an on-site

pH meter, Oldcastle shall have all stormwater samples collected pursuant to this Settlement

Agreement delivered to a California state certified environmental laboratory for analysis within

the time needed for analysis within laboratory method allowable hold times.  The laboratory

shall thereafter conduct analysis sufficient to detect individual constituents at or below the levels

set forth in the attached Exhibit 1 with the exception of pH.

17.    **Sample Result Reporting**:  After the Effective Date, Oldcastle shall provide

complete results from sampling and analysis to Baykeeper within ten (10) business days of its

receipt of the laboratory report from each sampling event.

18.    **End of Season Summary**:  By July 1st following each Wet Season that occurs

during the Settlement Agreement, Oldcastle shall prepare and send to Baykeeper an End of

Season Summary that includes: 1) a summary chart with all of the sample results from the

previous Wet Season including the constituent concentration(s) from Designated Discharge Point

sample(s) collected at the Facility exceeding the Target Levels in Exhibit 1 ("Exceedance(s)"),

and 2) identification of (if any) new BMPs that Oldcastle has implemented or will implement not already discussed in a prior End of Season Summary or Action Plan for the immediately prior Wet Season.

19.     **Action Plan**:  If any stormwater sample result during a Wet Season exceeds any Target Level set forth in Exhibit 1, Oldcastle shall submit an Action Plan in addition to an End of Season Summary by July 1st following that Wet Season.

20.     **Contents of Action Plan**:  If an Action Plan is required, it shall set forth:  1) the possible sources of Oldcastle's Exceedance(s) during the applicable Wet Season, 2) revised and/or additional BMPs that are designed to reduce the level of constituent concentrations associated with the Exceedances in future storm water discharges to the Target Levels in Exhibit 1, and that are designed to achieve applicable water quality standards for those constituents, and 3) a schedule to implement any revised and/or additional BMPs by the earliest reasonable time, and no later than October 1 of the next Wet Season.  In any Action Plan required under this Settlement Agreement, Oldcastle shall consider the following BMPs:  1) additional coverage of work and/or storage areas, 2) paving portions of its pervious and semi-pervious surfaces, and 3) additional filtration/treatment.  If Oldcastle determines not to implement these BMPs, it shall set forth in the Action Plan the reasons for any such determination.

21.     **Baykeeper Review of Action Plan**:  Baykeeper shall have thirty (30) days from receipt to propose revisions to the Action Plan.  Within thirty (30) days of receiving Baykeeper's revisions, Oldcastle shall agree or disagree with the proposed revisions.  If required, a revised Action Plan will be provided to Baykeeper with explanations as to why any requested revisions were not adopted.  Any disputes regarding the revisions may be resolved per the dispute resolution provisions of this Agreement.

22.      Oldcastle shall implement the Action Plan(s) adopted pursuant to this Settlement Agreement as an obligation of this Settlement Agreement.

23.      Within thirty (30) days after BMPs set forth in an Action Plan pursuant to this Settlement Agreement are implemented, Oldcastle shall amend the Facility SWPPP to include all BMP revisions or additions not otherwise already implemented and included in the SWPPP. Within thirty (30) days thereafter, Oldcastle shall provide Baykeeper with a copy of such revised SWPPP.

24.      During each Wet Season, Oldcastle is under an ongoing obligation to evaluate the BMPs implemented at the Facility and discussed in current or previous Action Plans and, if Target Levels have been exceeded, continue to attempt to reduce the concentrations to Target Levels for the remainder of the Wet Season.  Oldcastle shall use the results from subsequent stormwater samples as they become available to assist with their ongoing evaluation of the effectiveness of BMPs.

25.      **Stipulated Payments:** Oldcastle shall pay the following stipulated payments during the Term of this Settlement Agreement:

a.      One thousand dollars ($1,000) for each failure to collect a sample required under this Settlement Agreement during a Wet Season;

b.      Two hundred fifty dollars ($250) each time that a parameter from a sampling event exceeds the Target Levels on Exhibit 1;

c.      In the event that Oldcastle fails to submit to Baykeeper any document, report or other communication required in this Settlement Agreement by its due date, Oldcastle shall pay a late payment of two hundred fifty dollars ($250) per business

11

day after the report due date commencing on the sixth (6th) business day after the
report due date; and

d.      Oldcastle shall incur a two hundred fifty dollar ($200) per day payment for
every business day (Monday through Friday, excluding state and federal holidays)
after five (5) days past the due date that Oldcastle fails to submit any payments due
under paragraphs 25, 28 and 29 of this Settlement Agreement.

e.      Any stipulated payments described above shall be paid by September 1st
of each year this Settlement Agreement is in effect to the Rose Foundation for the
Environment, 1970 Broadway, Suite 600, Oakland, California 94612, Attn: Tim
Little, with a copy of payment sent concurrently to Baykeeper.  Stipulated payment
funds will be used by the Rose Foundation to fund projects that benefit water quality
in the San Francisco Bay watershed.  In no case shall any of the funds be received by
Baykeeper.

26.     **Site Access**:  During the Term of this Settlement Agreement, Oldcastle shall
permit representatives of Baykeeper to perform one (1) physical inspection per year of the
Facility during operating hours ("Site Inspection").  Baykeeper shall provide Oldcastle at least
two business days notice in advance of such Site Inspection, and Oldcastle shall have the right to
deny access if circumstances would make the Site Inspection unduly burdensome and pose
significant interference with business operations.  In such case, Oldcastle shall specify at least
two (2) days within the next two (2) weeks upon which a Site Inspection may proceed during
normal business hours, and the Parties shall agree upon the inspection date.  Baykeeper shall
comply with all safety instructions provided to Baykeeper by Oldcastle staff during all Site

12

Inspections.  During Site Inspections, Baykeeper shall be allowed to inspect and sample any stormwater discharges.

27.    **Reports**:  During the Term of this Settlement Agreement, Oldcastle shall provide Baykeeper with a copy of all documents submitted to the Regional Water Board or the State Water Board concerning the Facility's compliance with the Industrial Stormwater Permit.  Such documents and reports shall be transmitted to Baykeeper via electronic mail, if feasible, or by U.S. Mail when electronic transmission is not feasible, at the time the documents are due to be submitted to the Regional Water Board or State Water Board.

### IV.    MITIGATION, FEES, AND COSTS

28.    **Reimbursement of Fees and Costs**:  Oldcastle shall reimburse Baykeeper in the amount of twelve thousand dollars ($12,000) to help defray Baykeeper's reasonable investigation, expert, and attorneys' fees and costs, and all other reasonable costs incurred as a result of investigating the activities at the Facility related to this Settlement Agreement, bringing these matters to Oldcastle's attention, and negotiating a resolution of this action in the public interest.  Payment of $12,000 shall be made to Baykeeper within thirty (30) days of the Effective Date.

29.    **Compliance Monitoring Funds:**  Oldcastle shall provide to Baykeeper four thousand dollars ($4,000) for costs and fees associated with monitoring Oldcastle's compliance with this Settlement Agreement.  Payment of $4,000 shall be made to Baykeeper within thirty (30) days of the Effective Date.

30.    **Dispute Resolution**: If a dispute under this Settlement Agreement arises, or the Parties believe that a breach of this Settlement Agreement has occurred, the Parties shall schedule a meet and confer within ten (10) business days, or such date as may be agreed upon, of

13

receiving written notification from the other Party of a request for a meeting to determine whether a violation of this Settlement Agreement has occurred and to develop a mutually agreed upon plan to resolve the dispute.  If the Parties fail to meet and confer or the meet and confer does not resolve the issue, after at least seven (7) business days have passed after the meet and confer occurred or should have occurred, either Party shall be entitled to all rights and remedies under the law, including bringing a motion before the United States District Court for the Northern District of California for the limited purpose of enforcing the terms of this Settlement Agreement.  The parties shall be entitled to seek fees and costs incurred in any such action pursuant to the provisions set forth in the Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), and applicable case law interpreting such provisions.

## V.      JURISDICTION OVER PARTIES AND SUBJECT MATTER OF THE SETTLEMENT AGREEMENT

31.     **Jurisdiction.**  For the purposes of this Settlement Agreement, the Parties stipulate that the United States District Court of California, Northern District of California, has jurisdiction over the Parties and subject matter of this Settlement Agreement.  The Parties stipulate that venue is appropriate in the Northern District of California and that Oldcastle will not raise in the future as part of enforcement of this Settlement Agreement whether Baykeeper has standing to bring the Complaint, any action to enforce this Settlement Agreement or any motion pursuant to the Dispute Resolution procedures herein.

32.     **Submission of Settlement Agreement to DOJ.**  Within three (3) business days of receiving all of the Parties' signatures to this Settlement Agreement, Baykeeper shall submit this Settlement Agreement to the U.S. Department of Justice ("DOJ") and EPA for agency review consistent with 40 C.F.R. § 135.5.  The agency review period expires forty-five (45)

14

calendar days after receipt by the DOJ, evidenced by correspondence from DOJ establishing the review period.  In the event DOJ comments negatively on the provisions of this Settlement Agreement, the Parties agree to meet and confer to attempt to resolve the issues raised by DOJ.

33. **Stipulation to Dismiss With Prejudice.**  Within ten (10) calendar days of the expiration of the DOJ's 45-day review period as provided in this Settlement Agreement, the Parties will submit this Settlement Agreement to the District Court along with a Stipulation and proposed Order which shall provide:

a. For dismissal of the Complaint and all claims therein with prejudice pursuant to the Federal Rule of Civil Procedure 41(a)(2); and

b. That the Court shall retain and have jurisdiction over the Parties with respect to resolving disputes arising under this Settlement Agreement and shall have the power to enforce compliance by the Plaintiff and Defendant with the terms of this Settlement Agreement.

## VI. WAIVER, RELEASES AND COVENANTS NOT TO SUE

34. **Baykeeper Waiver and Release of Noticed Parties and Covenant Not to Sue**: Upon the Effective Date, Baykeeper, on its own behalf and on behalf of its officers, directors, employees, parents, subsidiaries, affiliates, and each of their successors and assigns covenants not to sue Oldcastle or its officers, directors, employees, members, parents, subsidiaries, affiliates, or their successors or assigns, or its agents, attorneys, or other representatives with respect to any stormwater discharges from the Facility that arose before the effective date of this Settlement Agreement.  Baykeeper, on its own behalf and on behalf of its officers, directors, employees, parents, subsidiaries, affiliates, and each of their successors and assigns releases Oldcastle or its officers, directors, employees, members, parents, subsidiaries, affiliates, or their successors or assigns from and waives all claims raised in the 60-Day Notice and/or the

15

Complaint, including all claims for fees (including fees of attorneys, experts, and others), costs, expenses, or any other sum incurred or claimed, or which could have been claimed, for matters included in the 60-Day Notice and/or the Complaint.

35.     **Oldcastle's Waiver and Release of Baykeeper**:  Oldcastle, on its own behalf and on behalf of its officers, directors, employees, members, parents, subsidiaries, affiliates, or their successors or assigns release Baykeeper and its officers, directors, employees, members, parents, subsidiaries, and affiliates, and each of their successors and assigns from, and waive all claims which arise from or pertain to, the 60-Day Notice and/or the Complaint, including all claims for fees (including fees of attorneys, experts, and others), costs, expenses or any other sum incurred or claimed, or which could have been claimed, for matters included in the 60-Day Notice and/or the Complaint.

### VII.    MISCELLANEOUS PROVISIONS

36.     **Effective Date**:  The Effective Date of this Settlement Agreement shall be the last day for the U.S. Department of Justice to provide comment on this Settlement Agreement, i.e., the 45th day following the U.S. Department of Justice's receipt of the Settlement Agreement.

37.     **Term of Settlement Agreement**:  This Settlement Agreement shall continue in effect until September 1, 2017 (the "Term"), at which time the Settlement Agreement, and all obligations under it, shall automatically terminate.  The waivers, releases, and covenants contained in paragraphs 34-35, inclusive, of this Settlement Agreement shall survive the termination of this Settlement Agreement.

38.     **Execution in Counterparts**:  The Settlement Agreement may be executed in one or more counterparts which, taken together, shall be deemed to constitute one and the same document.

39.     **Signatures**:  The Parties' signatures to this Settlement Agreement transmitted by facsimile or electronic mail transmission shall be deemed binding.

40.     **Construction**:  The language in all parts of this Settlement Agreement, unless otherwise stated, shall be construed according to its plain and ordinary meaning.  The captions and paragraph headings used in this Settlement Agreement are for reference only and shall not affect the construction of this Settlement Agreement.

41.     **Authority to Sign**:  The undersigned are authorized to execute this Settlement Agreement on behalf of their respective parties and have read, understood and agreed to all of the terms and conditions of this Settlement Agreement.

42.     **Integrated Settlement Agreement**:  All agreements, covenants, representations and warranties, express or implied, oral or written, of the Parties concerning the subject matter of this Settlement Agreement are contained herein.

43.     **Severability**:  In the event that any of the provisions of this Settlement Agreement are held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

44.     **Choice of Law**:  This Settlement Agreement shall be governed by the laws of the United States, and where applicable, the laws of the State of California.

45.     **Full Settlement**:  This Settlement Agreement constitutes a full and final settlement of this matter.

46.     **Negotiated Agreement**:  The Parties have negotiated this Settlement Agreement, and agree that it shall not be construed against the party preparing it, but shall be construed as if the Parties jointly prepared this Settlement Agreement, and any uncertainty and ambiguity shall not be interpreted against any one party.

17

47. **Modification of the Agreement**: This Settlement Agreement, and any provisions herein, may not be changed, waived, or discharged unless by a written instrument signed by the Parties.

48. **Assignment**: Subject only to the express restrictions contained in this Settlement Agreement, all of the rights, duties, and obligations contained in this Settlement Agreement shall inure to the benefit of and be binding upon the Parties, and their successors and assigns.

49. **Mailing of Documents to Baykeeper/Notices/Correspondence**: Any notices or documents required or provided for by this Settlement Agreement or related thereto that are to be provided to Baykeeper pursuant to this Settlement Agreement shall be, to the extent feasible, sent via electronic mail transmission to the e-mail addresses listed below or, if electronic mail transmission is not feasible, via certified U.S. Mail with return receipt, or by hand delivery to the following address:

Baykeeper:

Andrea Kopecky
San Francisco Baykeeper
785 Market Street, Suite 850
San Francisco, CA 94103
E-mail: andrea@baykeeper.org

Unless requested otherwise by Oldcastle, any notices or documents required or provided for by this Settlement Agreement or related thereto that are to be provided to Oldcastle pursuant to this Settlement Agreement shall, to the extent feasible, be provided by electronic mail transmission to the e-mail addresses listed below, or, if electronic mail transmission is not feasible, by certified U.S. Mail with return receipt, or by hand delivery to the addresses below:

Oldcastle:

William Miller
General Counsel

900 Ashwood Parkway, Suite 600
Atlanta, GA  30338
Email: Bill.Miller@oldcastlelaw.com

With a copy to:

Deborah Murphey
Email: deborah.murphey@oldcastlelaw.com

Notifications of communications shall be deemed submitted on the date that they are emailed, or postmarked and sent by first-class mail or deposited with an overnight mail/delivery service.  Any changes of address or addressees shall be communicated in the manner described above for giving notices.

50.     **Impossibility of Performance**:  No Party shall be considered to be in default in the performance of any of its obligations under this Settlement Agreement when performance becomes impossible, despite the timely good faith efforts of the Party, due to circumstances beyond the Party's control, including without limitation, any act of God, act of war or terrorism, fire, earthquake, flood, and restraint by court order or public authority.  "Circumstances beyond the Party's control" shall not include normal inclement weather, economic hardship or inability to pay.  Any Party seeking to rely upon this paragraph shall have the burden of establishing that it could not reasonably have been expected to avoid, and which by exercise of due diligence has been unable to overcome, the impossibility of performance.

51.     If for any reason the DOJ or the District Court should decline to approve this Settlement Agreement in the form presented, the Parties shall use their best efforts to work together to modify the Settlement Agreement within thirty (30) days so that it is acceptable to the DOJ or the District Court.  If the Parties are unable to modify this Settlement Agreement in a mutually acceptable manner that is also acceptable to the DOJ or District Court, this Settlement

Agreement shall immediately be null and void as well as inadmissible as a settlement

communication under Federal Rule of Evidence 408 and California Evidence Code section 1152.

AGREED:


SAN FRANCISCO BAYKEEPER

Date:  4/1/2014


Andrea L. Kopecky

Andrea Kopecky
**Staff Attorney, San Francisco Baykeeper**


OLDCASTLE PRECAST, INC.

Date:  4/9/2014


PAUL MILLER
COO/GM N.CAL.
OLDCASTLE PRECAST, NC.


20

APPROVED AND SO ORDERED, this ___ day of _____.


      UNITED STATES DISTRICT JUDGE


      _____

# EXHIBIT 1

**Target Levels for Stormwater Sampling**

| Constituent | Target Levels | Source |
|---|---|---|
| **Total Suspended Solids** | 100 mg/L | *Multi-Sector General Permit 2008 benchmark* |
| **pH** | 6.0-9.0 SU | *Multi-Sector General Permit 2008 benchmark* |
| **Iron** | 1.0 mg/L | *Multi-Sector General Permit 2008 benchmark* |

EXHIBIT 2

PDD-6539

## PLAN VIEW
ENTIRE SYSTEM SHOWN
SCALE: 1/6

100.00' [1200.00"]
POSSIBLE EXPANSION OF TREATMENT LINE #3L PERFORATED PIPE SECTION

200.00' [2400.00"]
BIO-MOD BIORETENTION TREATMENT AREA – LEFT

200.00' [2400.00"] TREATMENT LINE #3L SOLID PIPE SECTION

100.00' [1200.00"] TREATMENT LINE #2L PERFORATED PIPE SECTION

100.00' [1200.00"] TREATMENT LINE #2L SOLID PIPE SECTION

87.00' [1044.00"] OUTLET CHAMBER
87.00' [1044.00"] LONG.

OUTLET, Ø12.00" HDPE.

43.50' [522.00"]

300.00' [3600.00"]
BIO-MOD BIORETENTION TREATMENT AREA – RIGHT

200.00' [2400.00"] TREATMENT LINE #3R SOLID PIPE SECTION

100.00' [1200.00"] TREATMENT LINE #2R SOLID PIPE SECTION

100.00' [1200.00"] TREATMENT LINE #2R PERFORATED PIPE SECTION

100.00' [1200.00"]
POSSIBLE EXPANSION OF TREATMENT LINE #3R PERFORATED PIPE SECTION

9.00' [108.00"]

8.00' [96.00"]

20.00' [240.00"] TYPICAL

20.00' [240.00"] TYPICAL

100.00' [1200.00"] TREATMENT LINE #1L PERFORATED PIPE

2X Ø36.00"
MAINTENANCE/INSPECTION HATCHES.

3X 48.00"X72.00"
MAINTENANCE/INSPECTION HATCHES.

100.00' [1200.00"] TREATMENT LINE #1R PERFORATED PIPE

## PLAN VIEW
TREATMENT AREA RIGHT SHOWN IN PHANTOM
SCALE: 1X

100.00' [1200.00"]
100.00' [1200.00"]
87.00' [1044.00"]
43.50' [522.00"]

.50' [6.00"] TYPICAL WALL THICKNESS

TREATMENT LINE# 3L, Ø12.00" SOLID PIPE 200.00'[2400.00"] LONG. (CAPPED FOR POSSIBLE FUTURE EXPANSION).

TREATMENT LINE# 2L, Ø12.00" PERFORATED PIPE 100.00'[1200.00"] LONG.

6X Ø12.00 PVC TREATMENT OUTLETS IE: 187.96'. (3 EACH LEFT & RIGHT SIDES).

TREATMENT LINE# 2L, Ø12.00" SOLID PIPE 100.00'[1200.00"] LONG.

OUTLET, Ø12.00" HDPE.
IE: 187.21'.

OUTLET CHAMBER 87.00'[1044.00"] LONG.

BIO-MOD BIORETENTION TREATMENT AREA – RIGHT IS MIRROR OF LEFT

8.00' [96.00"]
9.00' [108.00"]

4X Ø12.00" PVC CLEAN OUT.

3.00'[36.00"] CURB CUTS, WITH ADJUSTABLE WIERS/BLOCK-OUT, EVENLY SPACED.

TREATMENT LINE# 1L, Ø12.00" PERFORATED PIPE 100.00'[1200.00"] LONG.

3X 48.00"X72.00" MAINTENANCE/INSPECTION HATCHES.

2X Ø36.00" MAINTENANCE/INSPECTION HATCHES.

2X Ø36.00"X6.00" INLET, WITH ADJUSTABLE WIERS/BLOCK-OUT.

3.06' [36.69"]

## SECTION A-A
TREATMENT AREA RIGHT SHOWN IN PHANTOM
SCALE: 1X

1.71' [20.50"] PONDING
3.00" MULCH

4X Ø12.00 PVC CLEAN OUT.

3.00'[36.00"] CURB CUTS, WITH ADJUSTABLE WIERS/BLOCK-OUT, EVENLY SPACED. NEARSIDE ONLY.

Ø2.00" IRRIGATION PORT. ONE IN OPPOSITE WALLS PER SECTION.

IE: 192.59'
TC: 193.09'

TC: 193.92'

5.71' [68.50"]

1.50' [18.00"] FILTER MEDIA
1.50' [18.00"] DRAIN ROCK

DRAIN ROCK.
BIORETENTION/SAND FILTER MEDIA.
Ø12.00" PERFORATED PIPE. SEE PLAN VIEW.
3.00" MULCH.

OUTLET CHAMBER 87.00'[1044.00"] LONG.

OUTLET, Ø12.00" HDPE, IE: 187.21', FARSIDE.

IE: 187.96'

BIO-MOD BIORETENTION TREATMENT AREA – RIGHT IS MIRROR OF LEFT

## SECTION B-B
TREATMENT AREA RIGHT NOT SHOWN
SCALE: 1X

6X Ø12.00 PVC TREATMENT OUTLETS IE: 187.96'. (3 EACH LEFT & RIGHT SIDES).
4X Ø12.00" PVC CLEAN OUT.

3.00'[36.00"] CURB CUTS, WITH ADJUSTABLE WIERS/BLOCK-OUT, EVENLY SPACED. NEARSIDE ONLY.

RIM: 193.92'

.83' [10.00"]

.50' [6.00"]
OUTLET, Ø12.00" HDPE.

IE: 192.59'
TC: 193.09'

RIM: 193.92'
TC: 193.92'

5.88' [70.50"]
5.13' [61.50"]
IE: 187.96'

5.71' [68.50"]
7.21' [86.50"]

IE: 187.21'

IE: 187.38'
IE: 186.71'

TREATMENT LINE# 3L, Ø12.00" SOLID PIPE 200.00'[2400.00"] LONG. (CAPPED FOR POSSIBLE FUTURE EXPANSION).

## NOTES:

1. OUTLETS ARE PROVIDED AS OVERSIZED HOLES TO ACCOMMODATE REQUIRED PIPE. ADAPTORS/ANGLES AND EXTERNAL PIPING BY OTHERS.

2. BIOMOD BIORETENTION SYSTEMS ARE MANUFACTURED TO ASTM C857 & ASTM C858.

3. US PATENTS PENDING.

PRELIMINARY DRAWING
THIS IS A CONCEPTUAL DRAFT FOR DESIGN CONFORMATION / APPROVAL

DATE:_____
APPROVED:_____

| P02 | NONE | REDUCED LENGTH BY 100' FROM EACH END. | | JPR 2/28/14 |
|---|---|---|---|---|
| REV | ECO NO. | DESCRIPTION | | APPROVED |

KriStar Enterprises, Inc.
360 Sutton Place, Santa Rosa, CA 95407
Ph: 800.576.8819.  Fax: 707.524.8186.  www.kristar.com

bio-mod

Bio-Mod™
*Bioretention System*

| APPROVALS | DATE |
|---|---|
| J. RIGGAR | 2/26/14 |
| I. MARSHALL | 2/26/14 |
| C. DEMAREST | 2/26/14 |

DRAWN
CHECKED
PROJECT ENGINEER

Customer: Oldcastle Precast
Job Name: Oldcastle Precast - Pleasanton, CA

DO NOT SCALE DRAWING | SCALE: NONE | SIZE: B | DRAWING NO. PDD-6539 | REV P02 | SHEET 1 OF 1

# EXHIBIT B



**U.S. Department of Justice**

Environment and Natural Resources Division

90-1-24-03730

*Law and Policy Section*             *Telephone (202) 514-1442*
*P.O. Box 7415*             *Facsimile (202) 514-4231*
*Ben Franklin Station*
*Washington, DC 20044-7415*

June 2, 2014

Clerk's Office
United States District Court
Northern District of California
Oakland Division
Ronald V. Dellums Federal Building
1301 Clay Street
Oakland, CA 94612

       Re:      <u>San Francisco Baykeeper v. Oldcastle Precast, Inc.</u>, United States District Court
                 for the Northern District of California, Case No. 4:13-cv-5153

Dear Clerk of Court:

       I am writing to notify you that the United States has reviewed the proposed consent judgment in this action and does not object to its entry by this Court.

       On April 16, 2014, the Citizen Suit Coordinator for the Department of Justice received a copy of the proposed consent judgment in the above-referenced case for review pursuant to Clean Water Act, 33 U.S.C. § 1365(c)(3). This provision provides, in relevant part:

            No consent judgment shall be entered in an action in which the United States is not a party prior to 45 days following the receipt of a copy of the proposed consent judgment by the Attorney General and the Administrator.

<u>See also</u> 40 C.F.R. § 135.5 (service on Citizen Suit Coordinator in the U.S. Department of Justice). A settlement that does not undergo this federal review process is at risk of being void.

       In its review, the United States seeks to ensure that the proposed consent judgment complies with the requirements of the relevant statute and is consistent with its purposes. <u>See</u> <u>Local 93, Int'l Ass'n of Firefighters v. City of Cleveland</u>, 478 U.S. 501, 525-26 (1986) (a consent decree should conform with and further the objectives of the law upon which the complaint was based). For example, if the defendant has been out of compliance with statutory or permit requirements, the proposed consent judgment should require the defendant to come into prompt compliance and should include a civil penalty, enforceable remedies, injunctive relief, and/or a supplemental environmental project (SEP) payment sufficient to deter future violations, or combinations of the above.

In this case, the Baykeeper alleged violations of section 301 of the Clean Water Act, 33 U.S.C. § 1311, for the unlawful discharge of pollutants and violations of storm water permit requirements. In terms of injunctive relief, the consent decree includes, *inter alia*, provisions that the Defendant implement a number of specified best management practices, including periodic inspection and cleaning of storm drain inlets and catch basins; management, maintenance and removal of vehicles and equipment to minimize pollutant discharges; installation of a filtration device; and use of dust suppression techniques. It also requires Defendant to conduct specified monitoring and reporting, conduct employee training, amend its Stormwater Pollution Prevention Plan to incorporate compliance measures set forth in the consent judgment, and allow Baykeeper one physical site inspection per year during the life of the consent decree.

The consent decree also provides that, in the event of future missed deadlines or failure to monitor by the Defendant, the Defendant shall pay stipulated amounts to Rose Foundation to fund SEPs that benefit the water quality in the San Francisco watershed. Here, "the San Francisco watershed" describes a very large area that may not ensure that the selected project will be within the immediate geographic area of the alleged violation. The United States encourages the parties to select projects that are in the immediate geographic area of the alleged violations when possible. Similarly, to better enable the United States and courts to evaluate the appropriateness of a proposed consent judgment, parties are generally encouraged to specify a particular project or type of project that SEP funds will be used for, particularly where, as here, a significant monetary contribution is involved. The project should have a sufficient nexus to the alleged violation. See, e.g., EPA Final Supplemental Environmental Projects Policy at 7 n. 5 (April 10, 1998). Where the parties are unable to identify a particular project or type of project at the time they lodge a proposed consent judgment, the United States requests to be informed when a project is ultimately selected as to the nature of such a project.

Where a consent judgment provides for the possible payment of sums to a third party that is to undertake a SEP, the United States ordinarily requests that the third party provide a letter to the Court and to the United States representing that it is a 501(c)(3) tax-exempt entity and that it (1) has read the proposed consent judgment; (2) will spend any monies it receives under the proposed judgment for the purposes specified in the judgment; (3) will not use any money received under the proposed consent judgment for political lobbying activities; and (4) will submit to the Court, the United States, and the parties a letter describing how the SEP funds were spent. On June 2, 2014, the United States received from the Rose Foundation a letter confirming that all funds received by the organization as a result of the consent judgment would be used solely for the purpose outlined in the decree and that The Rose Foundation agrees not to use any of the funds it receives to conduct a SEP to fund political lobbying activities; a copy of that letter is attached. The United States believes that this letter will help to ensure that any monies expended under the consent judgment will be used in a manner that furthers the purposes of the Act, and that is consistent with the law and the public interest.

Given these representations, the United States has no objection to the entry of the proposed consent judgment. We accordingly notify the Court of that fact.

- 2 -

The United States affirms for the record that it is not bound by this settlement. See, e.g., Hathorn v. Lovorn, 457 U.S. 255, 268 n.23 (1982) (Attorney General is not bound by cases to which he was not a party); Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found. Inc., 484 U.S. 49, 60 (1987) (explaining that citizen suits are intended to "supplement rather than supplant governmental action"); Sierra Club v. Electronic Controls Design, 909 F.2d 1350, 1356 n.8 (9th Cir. 1990) (explaining that the United States is not bound by citizen suit settlements, and may "bring its own enforcement action at any time"); 131 Cong. Rec. S15,633 (June 13, 1985) (statement of Senator Chafee, on Clean Water Act section 505(c)(3), confirming that the United States is not bound by settlements when it is not a party). The United States also notes that, if the parties subsequently propose to modify any final consent judgment entered in this case, the parties should so notify the United States, and provide a copy of the proposed modifications, forty-five days before the Court enters any such modifications. See 33 U.S.C. §1365(c)(3).

We appreciate the attention of the Court. Please contact the undersigned at (202) 514-3473 if you have any questions.

Sincerely,

*/s/ Ragu-Jara Gregg*

Ragu-Jara Gregg, Attorney
U.S. Department of Justice
Environment and Natural Resources Division
Law and Policy Section
P.O. Box 7415
Washington, D.C. 20044-4390

cc: Counsel on Record via ECF

Attachment

- 3 -



WWW.ROSEFDN.ORG

1970 BROADWAY, SUITE 600, OAKLAND, CA 94612-2218
ROSE@ROSEFDN.ORG

OFFICE: 510.658.0702
FAX: 510.658.0732

6/2/14

Sarah Lu
Environment & Natural Resources Division
Law and Policy Section
P.O. Box 7415
Ben Franklin Station
Washington, D.C. 20044-7415

Re:  San Francisco Baykeeper v. Oldcastle Precast (CV-05153-KAW)

Dear Ms. Lu,

This letter is intended to provide assurance that I have received the proposed Settlement Agreement between San Francisco Baykeeper and Oldcastle Precast, and that I am authorized by my Board of Directors to make the following binding commitments on behalf of the Rose Foundation.

1) I understand that the Rose Foundation may receive stipulated payment funds from Oldcastle Precast as specified in the Settlement Agreement.

2) The Rose Foundation shall only use these Oldcastle Precast funds to support projects that will benefit water quality in the San Francisco Bay watershed. None of the funds shall be used to support San Francisco Baykeeper.

3) After the funds have been disbursed, the Rose Foundation shall send a report to the Justice Department, the court and the parties describing how the funds were utilized and demonstrating conformance with the nexus of the Settlement Agreement.

**Rose Foundation for Communities and the Environment**
The Rose Foundation is a 501(c)(3) public charity (tax ID#94-3179772).  Its mission is to support grassroots initiatives to inspire community action to protect the environment, consumers and public health. To fulfill this mission, the Rose Foundation conducts the following activities:

• Raise money to award as grants to qualified non-profit organizations conducting charitable operations. The Foundation does not fund political lobbying activities prohibited by Section 501(c)(3) of the IRS Code.

• Work directly in schools and in the community to encourage environmental stewardship and civic participation.

• Help government efforts to control pollution and protect the environment by encouraging community engagement in local, state and federal research and policy development.

Case 4:13-cv-00554-AW Document 16-2 Filed 06/07/14 Page 34 of 34

Within this broad range of activities, all of the Rose Foundation's work revolves around one or more of the following strategic themes:

- Build and maintain a bridge between the community and organized philanthropy.

- Protect the natural environment, public health, and community and consumer rights.

- Promote collaboration between labor, environmental, business, consumer and social interests.

- Cultivate a new generation of environmental stewards and social policy leaders.

- Respect the inalienable rights protected by our nation's constitution, and the essential human rights to clean air, clean water, and individual dignity and privacy.

The Rose Foundation is governed by a Board of Directors. Grant applicants are required to submit written proposals, which must include at a minimum specific information about the goals, activities and projected outcomes of the proposed project, background about the charitable applicant, budget information, and a specific funding request. The Foundation may require additional information in order to fully evaluate the application. Applications are first screened by Foundation staff. Staff then makes recommendations to the Foundation Board for action. The Foundation requires all projects to submit written reports within one year of receipt of the grant award describing work conducted under the grant, thereby providing an accountability mechanism over funds awarded. Annual audits by the certified public accounting firm Levy and Powers are posted on the Foundation's website www.rosefdn.org.

I hope this provides you with the information you require. Please do not hesitate to contact me with any questions, or for additional information at (510) 658-0702 or tlittle@rosefdn.org.

Sincerely,

Tim Little, Executive Director